**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 23-48-DLB-CJS**

**EDDIE WELCH**                                                                                      **PLAINTIFF**

**v.**                                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**LIBERTY MUTUAL PERSONAL INS. CO.**                                           **DEFENDANT**

**\*\*\* \*\*\* \*\*\* \*\*\***

Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual") has filed a Motion for Judgment on the Pleadings. (Doc. # 6). Plaintiff Eddie Welch has filed a Response (Doc. # 9), to which Liberty Mutual has filed its Reply (Doc. # 10). Additionally, Welch has filed a Motion to File an Amended Complaint (Doc. # 11) and Liberty Mutual has filed a Response in Opposition (Doc. # 12). The Motions are now ripe for review. For the reasons stated below, Liberty Mutual's Motion for Judgment on the Pleadings is **granted** in part and **denied** in part, and Welch's Motion to File an Amended Complaint is **granted**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Eddie Welch entered into a valid contract for homeowner's insurance with Liberty Mutual, for the policy period of November 30, 2020 to November 30, 2021. (Doc. # 5-1 at 3). On or about June 18, 2021, Welch's home at 202 Surfwood Drive in Florence, Kentucky, sustained property damage from a wind and hail storm. (Doc. # 11 at ¶ 1). Welch notified Liberty Mutual about the damage on December 22, 2021. (Doc. # 5 at ¶

1

8).[1]   Welch hired a contractor, William Wolfe, to examine the premises and prepare an estimate of the damages.  (Doc. # 11-1 at ¶ 9).  In his Affidavit, Wolfe indicates that he inspected the roofing and gutters at Welch's property on December 22, 2021.  (Doc. # 11-2 at ¶ 4).  Wolfe estimated that the repair and replacement of shingles and gutters from storm-related damage would amount to $32,482.53.  (*Id.* at ¶ 5).

Liberty Mutual claims that on January 6, 2022, Liberty Mutual's adjuster, Brian DeCarlo, inspected the premises and determined it would be necessary for an expert engineer to examine the damage.  (Doc. # 5 at ¶ 10).  Welch does not mention the initial review by Mr. DeCarlo in his Complaint or his Amended Complaint.  Liberty Mutual claims it sent a representative from Donan Engineering to Welch's property to inspect the property on January 10, 2022.  (*Id.*).  Donan Engineering prepared its report on January 14, 2022, concluding that the property was not damaged by hail, but instead affected by "age-related deterioration."  (Doc. # 5-2 at 15).  Additionally, the report concluded that eight shingle tabs on the sheds were damaged by wind in the past year.  (*Id.*).  Liberty Mutual claims that on the same date it received the report, DeCarlo provided an estimate to Liberty Mutual of $1,186.91 to repair the eight shingle tabs.  (Doc. # 5 at ¶ 10).  Liberty Mutual then sent a letter[2] to Welch, explaining the following:

> An inspection to main roof and detached garage found wear/tear and deterioration in the form of granule loss, blistering and nail pops. These

---

[1]     Welch does not indicate in his Complaint or his proposed Amended Complaint when he contacted Liberty Mutual about the damage, instead indicating that he "promptly notified [Liberty Mutual] of the occurrence . . . and has satisfied all conditions precedent to pursue a bona fide and valid property loss claim under the subject Mutual insurance policy . . . ." (Doc. # 1-1 at ¶ 8; Doc. 11 at ¶ 8).  Thus, the Court relies on the documents attached to Liberty Mutual's Answer to establish this date.

[2]     The parties dispute whether the letter was sent on January 4, 2022 or January 14, 2022. (Doc. # 9 at 13; Doc. # 10 at 2-3).  The Court will address this discrepancy in the analysis section below.

damages are excluded from coverage under your policy, as you will see in the policy language below. The engineer's report concluded that there was no hail damage to the roof structures of the home, garage or sheds, and no wind damage to the home or garage.  Wind damage was observed in the form of missing shingles on both sheds. Due to the age and condition of those shingles, an estimate was completed to replace the roof structures of those sheds.  However, the total estimated cost of repairs is lower than your wind/hail deductible of $1,297.50, so no payment can be made for these damages.

(Doc. # 5-4 at 2-3).  The letter included the relevant portion of Welch's policy explaining that it would not insure for loss from "wear and tear, marring, [and] deterioration."  (*Id.* at 3).  The letter also advised Welch that pursuant to his policy, "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."  (*Id.* at 4).

While Welch's original Complaint did not include information about events that occurred after the receipt of the letter, his proposed Amended Complaint includes William Wolfe's Affidavit, where he details additional communications with Liberty Mutual.  (Doc. # 11-2).  Wolfe states that "[o]n or about February 3, 2022, [he] understood that Liberty Mutual adjusters, Brian DeCarlo and Brad Fooks, were reviewing Mr. Welch's claim."  (*Id.* at ¶ 8).  He states that "[o]n February 24, 2022, Mr. Welch had a telephone conference with an adjuster, who indicated that Liberty Mutual might be willing to work something out on the roof of the house, but not on the garage and not on the gutters."  (*Id.* at ¶ 9).  On February 25, 2022, Wolfe claims that "Mr. Welch continued to have discussion wth [sic] regarding disposition of the claim; Mr. Welch was trying to get a supervisor's name and contact information from the adjuster.  That information was never sent to Mr. Welch."  (*Id.* at ¶ 10).  Wolfe also states that he attempted to continue negotiations "in late February of 2022 up through March 2022" but the adjuster "never finalized any offer" with him.  (*Id.*

at ¶ 11).  Wolfe concludes that Liberty Mutual "never provided [him] with a final disposition of the claim nor did they ever provide Welch with sufficient funds to repair/replace the roofs and the gutters, which had been damaged or destroyed."  (*Id.* at ¶ 12).

On March 23, 2023, Plaintiff filed suit in Boone Circuit Court against Liberty Mutual. (Doc. # 1 at ¶ 1).  He alleges claims of negligence, breach of contract, common law bad faith, statutory bad faith in violation of Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), and statutory bad faith in violation of Kentucky Consumer Protection Act ("KCPA").  (Doc. 1-1).  After receiving a global settlement demand of $100,000 on April 7, 2023 (Doc. # 1-2), Liberty Mutual filed a Notice of Removal with this Court.  (Doc. # 1). Liberty Mutual filed its Answer on April 14, 2023, including a copy of Welch's policy agreement, the report prepared by Donan Engineering, DeCarlo's damages estimate based on the report, and the letter provided to Welch indicating that he would not be receiving funds for his claim because the damage was under the deductible amount.  (*See* Doc. # 5).

Also on April 14, 2023, Liberty Mutual filed the instant Motion for Judgment on the Pleadings.  (Doc. # 6).  Liberty Mutual argues that Welch agreed to a one-year suit limitations period in his policy starting at the date of loss, and because his action was filed one year and nine months after the storm damage, his claims for breach of contract and negligence are untimely and should be dismissed.  (*Id.* at 1-2).  Liberty Mutual also argues that Welch's Complaint does not satisfy two of the three required elements of a bad faith claim, and thus his claims under the KUCSPA and KCPA fail as a matter of law.  (*Id.* at 2).

Welch filed a Response in Opposition, arguing that the Motion for Judgment on the Pleadings should be denied because determining the accrual date of the cause of action requires further discovery.  (Doc. # 9 at 5-6).  Welch points to the date discrepancy on the letter dated January 4, 2022, and argues that the doctrines of equitable tolling and equitable estoppel apply to his case.  (*Id.* at 10).  He claims that further discovery is necessary to determine whether Welch was under the "reasonable belief that Defendant Liberty Mutual was acting to resolve the loss claim, and that the insurer did not have the intention of enforcing the contractual statute of limitations against [him]."  (*Id.*).  Welch additionally argues that his bad faith claims are not time-barred, and that the January 4, 2022 letter being issued before Liberty Mutual had its own expert report of the property and estimation of the damages "provide evidence of bad faith on the part of Liberty Mutual."  (*Id.* at 13).  In its Reply, Liberty Mutual argues that neither equitable tolling nor equitable estoppel apply to Welch's case.  (Doc. # 10 at 2-3).  Liberty Mutual also argues that the date on the letter was a typographical error and the letter was actually sent on January 14, 2022, the same date as the engineering report and the date of the estimate. (*Id.*).

After the Motion for Judgment on the Pleadings was fully briefed, Welch filed a Motion to File an Amended Complaint, with an attached proposed Amended Complaint. (Doc. # 11).  Liberty Mutual filed a Response in Opposition to the Motion for Leave, arguing that the proposed Amended Complaint "presents no new material facts" that overcome the suit limitations period or meet the required elements of a bad faith claim. (*Id.* at 2, 5).  Welch did not file a reply.  The Court will consider the arguments herein.

## II.    ANALYSIS

### A.    Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As the Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted). The claimant must put forward enough facts that the court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion for judgment on the pleadings, the court must accept "all well-pleaded material allegations of the pleadings" from the non-moving party as true. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *JPMorgan*, 510 F.3d at 581-82 (citation and internal quotation marks omitted). The court should grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of

law." *Id*. at 582.   Courts may consider exhibits attached to the complaint without converting a 12(c) motion into a motion for summary judgment, as well as "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion . . .so long as they are referred to in the [c]omplaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Because Welch has filed a Motion to File an Amended Complaint that includes the proposed Amended Complaint (Doc. # 11), the Court will consider whether the proposed Amended Complaint would survive the Motion for Judgment on the Pleadings.  In general, a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).   "But a court need not grant a motion to amend when the reason for the amendment is improper, 'such as . . . *futility of amendment*[.]'"  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018)) (emphasis in original).   "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'"  *Id.* (quoting *Riverview Health Inst. LLC v. Med. Mut. of OH*, 601 F.3d 505, 512 (6th Cir. 2010)).

Additionally, federal courts apply the substantive law of the forum state in diversity actions.  *See City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Therefore, Kentucky substantive law will apply to Welch's claims for negligence, breach of contract, common law bad faith, statutory bad faith in violation of KUCSPA, and statutory bad faith in violation of KCPA.

**B.    Contractual Limitations on the Time to File Suit**

**1.    Breach of Contract**

Kentucky law has long recognized "the validity of insurance contract provisions requiring as a condition to sue that the action must be 'commenced within the time specified by the policy.'" *Edmonson v. Penn. Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989) (internal citations omitted).   Courts typically enforce such provisions unless they unreasonably limit the time in which parties can sue. *See Ashland Finance Co. v. Hartford Accident & Indemn. Co.*, 474 S.W.2d 364, 366 (Ky. 1971).   However, K.R.S. § 304.14-370 places additional restrictions on an out-of-state insurer's ability to contractually limit the time in which a party can file suit, stating that "no conditions, stipulations or agreements in a contract of insurance shall . . . limit the time for commencing actions against insurance companies to a period of less than one year from the time when the cause of action accrues."  *Id.*

The Sixth Circuit addressed this statute with respect to a suit limitations provision and a breach of contract claim in *Smith v. Allstate Ins. Co.*, 403 F.3d 401 (6th Cir. 2005). Finding that Kentucky courts had repeatedly enforced insurance contract provisions under which the time for suit began to run before the insured had the right to sue, the Circuit ultimately concluded that the limitations provision was not inconsistent with K.R.S. § 304.14-370.  *Id.* at 405.   The Sixth Circuit also acknowledged that a suit limitation provision may not be enforceable if it does not give a party a reasonable time to sue. *Smith*, 403 F.3d at 405-06.   The plaintiffs argued that the limitations period should have been tolled from the time the insurer received notice of the loss until denial of the claim,

but the Sixth Circuit rejected that argument as there was no Kentucky law supporting that provision. *Id.*

Following *Smith*, district courts in the Sixth Circuit applying Kentucky law have concluded that "the date of loss is not synonymous with the date of accrual" for all claims. *See Howard v. Allstate Ins. Co.*, No. 5:14-173-DCR, 2014 WL 5780967, at *4 (E.D. Ky. Nov. 5, 2014) (quoting *Price v. AgriLogic Ins. Servs., LLC*, 37 F. Supp. 3d 885, 892 (E.D. Ky. 2014)).  In *Tennant v. Allstate Ins. Co.*, this Court found that the date of accrual for a claim of bad faith under an insurance policy did not accrue until the denial of the plaintiff's claim for coverage, which was after the date of loss.  No. Civ.A. 04-54, 2006 WL 319046 (E.D. Ky. Feb.10, 2006); *see also Howard*, 2014 WL 5780967, at *4 (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 591 (6th Cir. 2004) (holding "legal rights and obligations vest when the last event necessary to create the cause of action occurs.")).  Thus, while the Sixth Circuit held in *Smith* that a suit limitations period that accrues on the date of the loss is valid for a breach of contract claim, the accrual date may vary for other claims.  *See Howard*, 2014 WL 5780967, at *4 ("[A] limitations period . . . must provide a party one year to bring suit from the accrual date of the action, *which may vary between claims brought in a single suit.*") (emphasis added).

As *Smith* is still good law in the Sixth Circuit, the Court finds that the suit limitation provision applies to Welch's claim for breach of contract.  *See Price*, 37 F. Supp. 3d at 894.  Because Welch does not dispute in his Complaint or proposed Amended Complaint that the date of loss was June 18, 2021, he needed to file suit by June 18, 2022 to preserve his claim for breach of contract.  (*See* Docs. # 1-1 at 6; Doc. # 11-1 at 3).

Instead, Welch waited until March 23, 2023 to file his suit in Kenton Circuit Court. (*See* Doc. # 1-1). Absent a finding of unreasonableness, his claim is time barred.

Welch argues in his Response that equitable tolling and equitable estoppel support the tolling of the limitations period. (Doc. # 9 at 7-10). Welch argues that determining the accrual date of the cause of action requires further discovery, and that further discovery will show that Welch was under the "reasonable belief that Defendant Liberty Mutual was acting to resolve the loss claim, and that the insurer did not have intention of enforcing the contractual statute of limitations against [him]." (Doc. # 9 at 5-6, 9-10). Welch cites to *Doe v. Billingsley*, an unpublished Sixth Circuit case that vacated an order granting a motion to dismiss because a plaintiff adequately pleaded equitable estoppel of the statute of limitations in a § 1983 action. No. 21-6023, 2022 WL 4088511, at *5 (6th Cir. Sept. 7, 2022). Welch argues that based on *Doe*, this Court must deny the Motion for Judgment on the Pleadings to permit discovery on his arguments of equitable tolling and equitable estoppel. (Doc. # 9 at 9-10).

*Doe* is unhelpful to Welch, as this case does not concern § 1983 or its statute of limitations, but instead an agreed upon suit limitations period in his insurance policy agreement. (*See* Doc. # 5-1). Further, the date of accrual of his cause of action can be determined with respect to Welch's breach of contract claim because the Sixth Circuit has held such limitations valid for breach of contract claims and neither party disputes the date of loss was June 18, 2021. *See Smith*, 403 F.3d at 405. Because the suit limitations period is valid under Sixth Circuit case law, Welch's breach of contract claim is roughly nine months too late.

Welch is correct that the letter from Liberty Mutual to Welch denying him payment for his loss is dated January 4, 2022.  (Doc. # 5-4).  Welch uses this date as evidence that the Court cannot determine the proper accrual date.  (Doc. # 9 at 6).  However, Liberty Mutual states in its Reply that "Liberty's Answer makes very clear that the letter was sent on January 14, 2022, the same date that Liberty obtained the engineering report, and that it was only an inadvertent error which listed the date as January 4, 2022."  (Doc. # 10 at 3).  While the Court is required to accept "all well-pleaded material allegations of the pleadings" of the non-moving party as true, see *Tucker*, 539 F.3d at 549 (citing *JPMorgan Chase Bank, N.A.*, 510 F.3d at 581), this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences."  *JPMorgan*, 510 F.3d at 581-82.  Welch does not rely on the January 4 date in his Complaint or proposed Amended Complaint, and the letter from Liberty Mutual specifically mentions the engineering report that was authored on January 14, 2022.  (Doc. # 5-4 at 2).  Thus, the letter could not have been sent to Welch on January 4, 2022 and the Court will accept January 14, 2022 as the date of the letter.  To conclude otherwise would be an unwarranted factual inference based on the pleadings before the Court.  *JPMorgan*, 510 F.3d at 581-82.

Additionally, though Welch raises the argument in his Response (Doc. # 9 at 7-10), he did not plead equitable estoppel or equitable tolling in his Complaint or his proposed Amended Complaint.  While a defendant typically bears the burden of establishing a statute of limitations defense, "when the court can ascertain form the complaint that the time period for bringing a claim has expired, a plaintiff must affirmatively plead an exception to the limitations statute."  *Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012) (quoting *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987)).

11

Welch's Complaint and proposed Amended Complaint include the language of K.R.S. § 304.14-370 in his statement of the Court's jurisdiction (Doc. # 1-1 at 5, Doc. # 11-1 at 3), but he does not acknowledge that his suit is time-barred based on existing case law or otherwise make an argument for equitable tolling or equitable estoppel anywhere in his pleadings.

Additionally, this Court has previously examined arguments for equitable tolling and equitable estoppel of a limitations period, and found that these arguments only prevail when a plaintiff has asserted some kind of misleading behavior by the insurance company. *See Barjuca v. State Farm Fire & Cas. Co.*, No. 5:11-cv-380-JMH-REW, 2013 WL 6631999, at *7-8 (E.D. Ky. Dec. 17, 2013) (collecting cases). There, the Court found it persuasive that the State Farm agent warned plaintiffs about the one-year limitations period in their communications. *Id.* at *8.

Such is the case here, where Welch received notice in the January 14, 2022 letter that he had one year from his date of loss to bring a claim under the policy. (*See* Doc. # 5-4 at 4). Apart from raising the issue of the date of the letter in his briefing for the instant Motion, Welch points to no facts that suggest that Liberty Mutual attempted to mislead him that it would be extending the time period for filing suit. For these reasons, the Motion for Judgment on the Pleadings will be **granted** as to Welch's claim for breach of contract.

## 2. Negligence

Welch's Complaint and proposed Amended Complaint allege that Liberty Mutual was negligent for the following:

> "[Liberty Mutual] breached their respective duty of good faith and fair dealing by, *inter alia*, engaging in the following acts or omissions: (a) negligently failing to provide an insurance policy which would actually cover wind and hail storm damage, as a covered loss under the applicable policy; (b)

negligently and/or recklessly made assurances to Plaintiff, Eddie Welch, that adequate insurance had been procured to cover, *inter alia*, the wind/hail storm damages; and or (c) other acts or omissions which resulted in a failure to provide adequate insurance coverage for the subject property."

(Docs. # 1-1 at 7-8; Doc. # 11-1 at 6).

In its Motion for Judgment on the Pleadings, Liberty Mutual combines its arguments for this claim with its arguments for dismissing the breach of contract claim. (*See* Doc. # 6 at 6). Liberty Mutual claims that like Welch's claim for breach of contract, his claim for negligence accrued on the date of loss, giving him one year from June 18, 2021 to file suit. (*Id.*). As noted above, while there is case law in this Circuit showing that suit limitation provisions that accrue on the date of loss are valid for breach of contract claims, other claims like negligence are less clear. *See Howard*, 2014 WL 5780967, *4 (quoting *Price*, 37 F. Supp. 3d at 892) (holding that "the date of loss is not synonymous with the date of accrual" for all claims.")).

Here, Welch alleges that Liberty Mutual was negligent for "failing to provide an insurance policy which would actually cover wind and hail storm damage;" making assurances to Welch that adequate insurance had been procured to cover the wind and hail damage; and "other acts or omissions which resulted in a failure to provide adequate insurance coverage for the subject property." (Doc. # 1-1 at 7-8; Doc. # 11-1 at 6). Based on these allegations, it would seem that the date of accrual for his claim would be January 14, 2022, when Liberty Mutual informed Welch that he would not be receiving compensation for the damage because it was under his deductible amount. (*See* Doc. # 5-4 at 2). Because the suit limitations period began on the date of loss, June 18, 2021, this would have given Welch only six months to file suit before its expiration on June 18, 2022. Without case law that specifically finds a suit limitations period such as this one

permissible for negligence claims, the suit limitations period does not satisfy the requirements of K.R.S. § 304.13-370 for this claim. *See Lackey v. Prop. & Cas. Ins. Co. of Hartford*, No. 3:15-cv-238-CHL, 2019 WL 7546593, at *2-3 (W.D. Ky. Oct. 15, 2019) (holding same for a claim of negligence); *see also Howard*, 2014 WL 5780967, at *5 (holding same for a claim of bad faith). The Court declines to evaluate whether Welch's claim for negligence meets ordinary pleading standards, because Liberty Mutual does not make that argument in its Motion for Judgment on the Pleadings. Thus, Liberty Mutual's Motion for Judgment on the Pleadings will be **denied** as to Welch's negligence claim.

### C.    Bad Faith Claims

Welch alleges bad faith under common law, the KUCSPA, and the KCPA. In *Wittmer v. Jones*, Kentucky "gathered all of the bad faith liability theories under one roof and established a test applicable to *all* bad faith actions . . . whether premised upon common law theory or a statutory violation." *Davidson v. Am. Freightways, Inc.*, 25 S.Wd.3d 94, 100 (Ky. 2000) (citing *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993) (emphasis added). *Wittmer* requires a plaintiff to allege and prove three elements for a bad faith claim:

> (1)    the insurer must be obligated to pay the claim under the terms of the policy;
>
> (2)    the insurer must lack a reasonable basis in law or fact for denying the claim; and
>
> (3)    it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890. Further, when a party seeks punitive damages as Welch does, he must plead "sufficient evidence of intentional misconduct or reckless disregard

of the rights of an insured claimant to warrant submitting the right to award punitive damages to the jury." *Cobb King v. Liberty Mut. Ins. Co.*, 54 F. App'x 833, 837 (6th Cir. 2003).

Liberty Mutual argues in its Motion for Judgment on the Pleadings that each of Welch's bad faith claims should be dismissed for failure to establish the second and third elements of the *Wittmer* test in his Complaint and Amended Complaint. (Doc. # 6 at 8-9). Welch's Response only addresses whether the claims are time-barred. (Doc. # 9 at 13-14, 16). Further, Welch does not revise his bad faith claims in his proposed Amended Complaint to counter the arguments raised by Liberty Mutual. (*See* Doc. # 11-1 at 11-18. In fact, the only changes appear to be one added citation to Wolfe's Affidavit (*id.* at 14), and a claim that damages are in excess of $75,000 for his claims under the KUCSPA and KCPA (*id.* at 16, 18).

Welch's Complaint and Amended Complaint do not allege sufficient facts to survive the Motion for Judgment on the Pleadings. In both Complaints, Welch cites the appropriate statutes and case law, but declines to make any factual allegations. For example, under his claim for common law bad faith, Welch simply states, "[Liberty Mutual]'s wrongful failure to promptly and reasonably adjust the subject loss claim . . . constitutes a series of arbitrary and capricious acts, without a reasonable factual basis and/or legal justification, thereby constituting multiple acts of bad faith toward [Welch]." (Doc. # 1-1 at ¶ 31; Doc. # 11-1 at ¶ 31). For his claim under the KUCSPA, he states that Liberty Mutual breached its duty of good faith and fair dealing by "wrongfully refus[ing] to indemnify [Welch] for, *inter alia.*, the losses and damages sustained during the June 18, 2021 wind storm / hail storm." (Doc. # 1-1 at ¶ 40; Doc. # 11-1 at ¶ 40). Welch then

states that Liberty Mutual knew it had no basis for the wrongful failure to properly indemnify Welch, "and/or acted with reckless disregard and/or reckless indifference toward [Welch] in the handling of, *inter alia*., the property damage claim of [Welch]. In failing to properly negotiate and address the property damage claim of [Welch], [Liberty Mutual] violated K.R.S. § 304.12-230 . . . by committing one or more of the following actions or omissions[.]" (Doc. # 1-1 at ¶ 42; Doc. # 11-1 at ¶ 42). Welch proceeds to list all 17 subdivisions of K.R.S. § 304.12-230 without adding any factual allegations of how Liberty Mutual violated these provisions of the KUCSPA. For his last claim under the KUCSPA, Welch does the same, listing the provisions of K.R.S. § 367.170 without explaining any action on the part of Liberty Mutual that would violate that statute. (Doc. # 1-1 at ¶ 46-47, 50-51; Doc. # 11-1 at ¶ 46-47, 50-51). He only states that Liberty Mutual's "improper failure to properly handle the Plaintiff's property damage and losses, consisted of arbitrary and capricious actions, without reasonable factual basis or legal justification, thereby constitute[ed] a violation of the Consumer Protection Act." (Doc. # 1-1 at ¶ 52; Doc. # 11-1 at ¶ 52).

Though the Court must accept "all well-pleaded material allegations of the pleadings of the" non-moving party as true, *see Tucker*, 539 F.3d at 549 (citing *JPMorgan Chase Bank, N.A.*, 510 F.3d at 581), the assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *JPMorgan*, 510 F.3d at 581-82 (citation and internal quotation marks omitted). Instead of alleging that Liberty Mutual acted in bad faith by pointing to any specific conduct, Welch's Complaint and proposed Amended Complaint simply state the legal standards of bad faith and make legal conclusions that he is entitled to relief.

16

To state a claim for bad faith, Welch is required to demonstrate that Liberty Mutual was obligated to pay his claim, that Liberty Mutual lacked a reasonable basis in law or fact for denying the claim, and that Liberty Mutual knew that there was no reasonable basis for denying the claim or that it acted with reckless disregard for whether such a basis existed. *See Wittmer*, 864 S.W.2d at 890. Welch's Complaint and his proposed Amended Complaint do not demonstrate any of these elements. Welch argues in his Response to the Motion for Judgment on the Pleadings that "the alleged denial, was issued prior to Liberty Mutual having (1) its own expert's report on the subject property and (2) Liberty Mutual's own estimate of the damages related to the loss. These facts alone provide evidence of bad faith on the part of Liberty Mutual." (Doc. # 9 at 13). However, as noted above, the date of the letter to Welch was a typo and should have been dated January 14, 2022, the same date as the engineering report and estimate that were referenced in the letter. (*See* Doc. 5-4). As noted by Liberty Mutual, Welch's Response focuses on the argument that his bad faith claims are not barred by the statute of limitations, which is not alleged by Liberty Mutual in its Motion for Judgment on the Pleadings. For these reasons, the Motion for Judgment on the Pleadings will be **granted** with respect to Welch's claims for common law bad faith, and bad faith under the KUCSPA and KCPA.

## III.   CONCLUSION

Accordingly, it is **ORDERED** that

(1)   Plaintiff's Motion for Leave to Amend the Complaint (Doc. # 11) is **GRANTED.** The Clerk of Court is directed to file the Amended Complaint (Doc. # 11-1) in the record.

17

(2)     Defendant's Motion for Judgment on the Pleadings (Doc. # 6) is **GRANTED** with respect to Counts 1, 3, 4, and 5 of Plaintiff's Amended Complaint (Doc. # 11-1).

(3)     Defendant's Motion for Judgment on the Pleadings (Doc. # 6) is **DENIED** with respect to Count 2 of Plaintiff's Amended Complaint (Doc. # 11-1).

(4)     Defendant **shall file a responsive pleading** to Plaintiff's Amended Complaint (Doc. # 11-1) no later than **twenty (20) days from the date of entry of this Order**.

This 19th day of October, 2023.

**Signed By:**

_**David L. Bunning**_   _DB_

**United States District Judge**

K:\DATA\ORDERS\Cov2023\23-48 MOO re MJOP.docx

18